1

**RISE LAW FIRM, PC**
LISA M. WATANABE-PEAGLER (SBN 258182)

2
NEHEMIAH H. CHOI (SBN 319836)
5900 Wilshire Blvd., Suite 2600

3
Los Angeles, California 90036-5013
Telephone:   (310) 728-6588

4
Facsimile:   (310) 728-6560
lisa@riselawfirm.com

5
nehemiah@riselawfirm.com

6
Attorneys for Plaintiff
LESLIE WILLIAMS

7
UNITED STATES DISTRICT COURT

8
CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

9
LESLIE WILLIAMS, an individual;            Case No.  5:18-cv-01565

10
        Plaintiff,                         **COMPLAINT FOR DAMAGES**

11
            vs.

12
GTT AMERICAS, LLC, a Delaware              1. **DISABILITY DISCRIMINATION**
limited liability company; GC                 **IN VIOLATION OF THE FEHA-**

13
PIVOTAL LLC doing business as                 **GOVT. CODE §§ 12940** *et seq.*;
GLOBAL CAPACITY, a Delaware

14
limited liability company; and DOES 1      2. **FAILURE TO PREVENT**
through 10, inclusive,                         **DISCRIMINATION IN VIOLATION**

15
                                               **OF THE FEHA - GOVT. CODE §§**
        Defendants.                            **12940** *et seq.*;

16

17
                                           3. **FAILURE TO ACCOMMODATE IN**
                                               **VIOLATION OF THE FEHA -**

18
                                               **GOVT. CODE §§ 12940** *et seq.*;

19
                                           4. **FAILURE TO ENGAGE IN THE**

20
                                               **INTERACTIVE PROCESS IN**
                                               **VIOLATION OF THE FEHA -**

21
                                               **GOVT. CODE §§ 12940** *et seq.*;

22
                                           5. **RETALIATION IN VIOLATION**

23
                                               **OF CFRA - GOVT. CODE §§**

24
                                               **12945.2** *et seq.*;

25
                                           6. **WRONGFUL TERMINATION IN**

26
                                               **VIOLATION OF PUBLIC POLICY**

27
                                           **[DEMAND FOR JURY TRIAL]**

28

COMPLAINT FOR DAMAGES

Plaintiff Leslie Williams ("Plaintiff") hereby brings this Complaint for Damages (the "Complaint") against Defendants GTT Americas, LLC, GC Pivotal LLC doing business as Global Capacity, and DOES 1 through 10, inclusive, and alleges as follows on her knowledge or on information and belief as to all other matters:

# I.

## PARTIES

1.    At the relevant times mentioned herein, Plaintiff was employed by Defendant GTT Americas, LLC ("GTT") and/or GC Pivotal LLC doing business as Global Capacity ("Global Capacity") (collectively, "Employers").  Plaintiff performed work for the Employers within San Bernardino County.  The unlawful conduct alleged herein occurred in San Bernardino County.  Plaintiff is, and at the relevant times mentioned herein was, a resident of San Bernardino County.  At the time of filing this Complaint, Plaintiff was, and still is, a citizen of the United States and his permanent home was, and still is, located in the State of California.  In this case, as of the date of this Complaint, Plaintiff was, and still is, a citizen of the State of California.

2.    At the relevant times mentioned herein, GTT was a Delaware limited liability company with its principal place of business located at 7900 Tysons One Place, Suite 1450 in McLean, Virginia.  Pursuant to the December 26, 2017 Statement of Information for GTT on file with the California Secretary of State, the only member of this LLC is GTT Communications, Inc. ("GTT Communications").  At the time of filing this Complaint, GTT Communications was, and still is, incorporated under the laws of the State of Delaware.  In addition, at the time of the filing of this Complaint, the principal place of business of GTT was, and still is, located in the State of Virginia.  The majority of GTT's officers direct, control and coordinate GTT's activities from the State of Virginia.  Therefore, at the time of filing this Complaint, GTT was, and still is, a citizen of the State of Virginia and the State of Delaware.

3.    At the relevant times mentioned herein, GC Pivotal LLC doing business as Global Capacity was a Delaware limited liability company with its principal place of

COMPLAINT FOR DAMAGES

business located at 7900 Tysons One Place, Suite 1450 in McLean, Virginia. Pursuant to the June 18, 2018 Statement of Information for Global Capacity on file with the California Secretary of State, the only member of this LLC is GTT. Pursuant to the December 26, 2017 Statement of Information for GTT on file with the California Secretary of State, the member of this LLC is GTT Communications. At the time of filing this Complaint, GTT Communications was, and still is, incorporated under the laws of the State of Delaware. In addition, at the time of the filing of this Complaint, the principal place of business of GTT was, and still is, located in the State of Virginia. The majority of GTT's officers direct, control and coordinate GTT's activities from the State of Virginia. Therefore, at the time of filing this Complaint, Global Capacity was, and still is, a citizen of the State of Virginia and the State of Delaware.

4.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of said defendants when the same has been ascertained. Each of the fictitiously named defendants is responsible in some manner for the acts complained of herein. Unless otherwise stated, all references to named defendants shall include DOE defendants as well.

## II.

## JURISDICTION AND VENUE

5.    Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because all parties are citizens of different states, and the amount in controversy in this matter exceeds the sum of $75,000.00, exclusive of interest and costs. As set forth above in Paragraphs 1-3 above, no plaintiff is a citizen of the same state as any defendant and therefore complete diversity exists between the parties pursuant to 28 U.S.C. § 1332.

6.    Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claim is based occurred in the Eastern District of California.

- 2 -
COMPLAINT FOR DAMAGES

### III.

### FACTUAL ALLEGATIONS

7. GC Pivotal LLC dba Global Capacity ("Global Capacity") is a telecommunications and internet provider company that was acquired by GTT Americas LLC ("GTT") in approximately September 2017. Plaintiff was employed by Global Capacity and/or GTT for close to 18 years from October 16, 2000 until his termination on April 16, 2018 as a Field Service Technician. As a Field Service Technician ("FST"), Plaintiff was responsible for, *inter alia*, servicing customers with their computer systems including servers, network infrastructure equipment and internet access or other equipment in the field as well as maintaining and servicing these computer systems at approximately 45 client locations in the Inland Empire region. Throughout his employment, Plaintiff reported directly to Rich Szamlewski ("Rich"), the Senior Supervisor of Field Operations, and Sean Kavanagh ("Sean"), the Director of West Coast Field Services/Vendor Management.

8. Plaintiff's work performance as a FST was exemplary over the years. However, in March 2017, Plaintiff suffered a torn meniscus in his right knee that was caused by repetitive movements at work. As a result of his injury, he visited a doctor at Kaiser Permanente ("Kaiser") on or about March 29, 2017. At that visit, the doctor instructed him to modify his work duties from March 29 to April 29 as follows: occasionally sit up to 25% of the shift and to occasionally drive up to 25% of the shift. Plaintiff notified Global Capacity about these restrictions.

9. Global Capacity therefore agreed to permit Plaintiff to work from home in a different position to accommodate his restrictions starting in April 2017. Specifically, Plaintiff performed job duties similar to a Tier 1 technical support representative at home – he offered technical support services in an online chat line room for 8 hours a day, 5 days a week to technicians across the county. At home, Plaintiff was able to use a sit/stand desk and an ergonomic chair.

10. On April 26, one of Plaintiff's doctors at Kaiser slightly modified his

COMPLAINT FOR DAMAGES

restrictions from April 28 to June 21 to include occasionally sitting up to 25% of shift and no more than 2 to 3 hours of driving per day until his knee issue was resolved. Plaintiff nevertheless continued to work in his technical support position.

11.    On June 30, Plaintiff's job duties were modified again for June 30 to July 30 to include driving intermittently up to 50% of shift; frequently bending at waist up or torso/spine twisting up to 75% of shift; no climbing stairs or ladders; no use of scaffolds or working at heights and lifting/carrying/pushing/pulling no more than 50 pounds. Shortly thereafter, Global Capacity considered whether it was possible to move the car seat back so that Plaintiff could comfortably drive his work vehicle.  However, it was determined that this was not possible due to liability concerns, so Plaintiff suggested that Global Capacity purchase a used rental car with the necessary leg space so that he could drive with his knee.  After having to follow up with Global Capacity on his request, Plaintiff was eventually informed about the company's refusal to provide this accommodation because it was not in the company's budget to purchase a used rental car.  Plaintiff therefore continued to work in the technical support position.

12.    On July 19, Plaintiff filed a workers' compensation claim for his injury.

13.    On August 7, Plaintiff visited a doctor at Kaiser and his restrictions were increased from August 8 to 18 since his injury had not improved.  Specifically, Plaintiff was instructed to drive intermittently up to 50% of shift; frequently bend at waist up or torso/spine twist up to 75% of shift; climb ladders occasionally up to 25% of shift; squat, kneel or bend occasionally up to 25% of shift and lift/carry/push/pull no more than 20 pounds.  The following day, Plaintiff texted a picture of his doctor's note to Rich and Sean.  That same day, Sean responded in a text message the following: "Got it. Rich can you block Les off indefinitely?"  Rich responded on August 9 that the "[j]obs have been moved and [Plaintiff's] profile is unavailable for work."  During this time, neither Rich nor Sean had any discussions with Plaintiff about his updated restrictions, whether there were any accommodations the company could provide to allow him to resume his position as a FST, or whether there was another position available (*e.g.*, a

1   position in tech support similar to what he had been doing up until that point) that would

2   allow him to continue working with his restrictions.

3       14.   Plaintiff was therefore forced to go on a medical leave of absence on or

4   about August 20.  Notably, shortly after he went on leave, Plaintiff received an email

5   from Janytra Brooks ("Janytra"), the Human Resources Manager, acknowledging that

6   his doctor's note said he could return to full capacity on August 19 and asking whether

7   he had any additional doctor's notes since then.  Plaintiff responded "no" and then told

8   Janytra that Sean was the one who said to block him off of work indefinitely.  Shortly

9   thereafter, Plaintiff had a telephone conversation with Janytra and Sean.  In this call,

10  Plaintiff told them that he had not visited the doctor since his last visit on August 7.

11  However, Plaintiff did confirm that he was able to return to work on August 19 per his

12  doctor's note.  Janytra and Sean noticed that Plaintiff's workers' compensation claim

13  was being reviewed and a determination would be made in October, so they decided to

14  wait to do anything until then.  Plaintiff therefore continued to remain on medical leave.

15      15.   In or around September 2017, GTT acquired Global Capacity and all of

16  Global Capacity's employees were transitioned to become GTT employees effective

17  January 1, 2018.   Starting on or about September 26, Plaintiff started receiving

18  treatment from Behnam Sam Tabibian, M.D., QME at the Physical Medicine Institute in

19  Sherman Oaks, California through his workers' compensation case.   Dr. Tabibian

20  instructed Plaintiff to perform modified work with the following restrictions: no driving

21  of commercial vehicles and semi-sedentary light duty work only.

22      16.   From September 26 to March 15, 2018, Plaintiff continued to see Dr.

23  Tabibian each month and his work restrictions remained the same after each visit.

24  Plaintiff spoke with Sean and was told that if a job became available that he could have

25  the job.  However, Plaintiff never heard from his manager, Human Resources or anyone

26  else about any such job vacancies.   In mid-March, Adrienne Littlepage-Cormier

27  ("Adrienne"), GTT's Human Resources Business Partner, mentioned to Plaintiff that

28  she aware of Global Capacity's prior decision that it was no longer in its budget to

COMPLAINT FOR DAMAGES

purchase a rental car for Plaintiff as an accommodation.  However, Adrienne said that may be an option with GTT as long as the company knew when he was going to return to work.

17.    On April 4, Plaintiff received an email with an attached letter from Adrienne.  In this letter, Adrienne initially summarized Plaintiff's leave history – *i.e.*, that he had been on leave since July 19, 2017 as of January 1, 2018 and then put on FMLA leave by GTT as of January 15, 2018.  Adrienne further stated that Plaintiff's FMLA leave was set to expire on April 8 and that if he was unable to return to work on or before April 16, then his employment would end.  In the letter, Adrienne also falsely stated that GTT had offered Plaintiff a larger service vehicle, which he declined. Moreover, Adrienne requested that Plaintiff provide any alternative accommodations to them by April 11.

18.    On April 13, Plaintiff emailed Adrienne to inform her that his injury had not improved and his restrictions remained the same.  Shortly thereafter, on April 16, Plaintiff received an email from Adrienne notifying him of GTT's decision to terminate his employment.  At that time, there had been no discussions with Plaintiff about alternative accommodations to allow him to resume in his position as a FST or other available positions in GTT and/or Global Capacity that Plaintiff could have performed with his restrictions.

19.    Plaintiff alleges that his physical disability and accommodation requests were substantial motivating reasons for GTT's sudden and abrupt decision to terminate his employment.  In addition to this unlawful termination, Plaintiff alleges that GTT further violated his rights by failing to engage in the interactive process and failing to provide him with reasonable accommodations prior to making the decision to terminate her employment.  Finally, Plaintiff further alleges that Global Capacity failed to reasonably accommodate him and engage in the interactive process that ultimately forced him to go on leave on or about August 20.

20.    The Employers' conduct, as described in paragraphs 7-19 above, was

COMPLAINT FOR DAMAGES

performed or ratified by managing agents, including, but not limited to, Larry, Rich, Sean, Janytra and Adrienne (collectively, the "Managing Agents"). The Managing Agents were each responsible for overseeing a substantial portion of the Employers' respective operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Employers' respective internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

21.     In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation at the workplace, especially when the Employers failed to provide Plaintiff with reasonable accommodations to allow him to return to work and failed to engage in a good faith interactive process with him.

22.     In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. By way of example, Global Capacity failed to accommodate Plaintiff or engage in a good faith interactive process with him which forced Plaintiff to take a medical leave of absence, and to remain on medical leave for months. GTT thereafter retaliated against Plaintiff by, among other things, refusing to allow him to return to his former position with accommodations or any other position, and then by terminating his employment for failure to return from his medical leave. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

23.     In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents intended to cause emotional injury to Plaintiff. Specifically, GTT terminated his employment solely because he was unable to return to work from his medical by a specified date with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and his emotional wellbeing.

COMPLAINT FOR DAMAGES

**IV.**

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

24.    Prior to the initiation of this lawsuit, Plaintiff filed complaints against each named defendant with the California Department of Fair Employment and Housing ("DFEH") pursuant to section 12900 *et seq.* of the California Government Code alleging the claims described in this Complaint that were later amended to add additional factual allegations.  On July 23, 2018, the DFEH issued a "right to sue" letter.  True and correct copies of the administrative complaint including the amended complaint, and the "right to sue" letter are attached hereto collectively as **Exhibit A**.  All conditions precedent to the institution of this lawsuit have been fulfilled.  This action is filed within one year of the date that the DFEH issued its right to sue letter.

**V.**

**FIRST CAUSE OF ACTION**

**(Disability Discrimination in Violation of the FEHA)**

**(On Behalf of Plaintiff Against All Defendants)**

25.    Plaintiff realleges and incorporates by reference paragraphs 1-24, inclusive, of this Complaint as though fully set forth herein.

26.    At the relevant times mentioned herein, Plaintiff was employed with the Employers and suffered from a physical disability that limited his ability to perform major life activities, including, but not limited to, his ability to work.  The Employers were made aware of Plaintiff's disability because Plaintiff informed them about the disability and the Employers approved his request for a medical leave of absence as well as his continued medical leave.

27.    As set forth in paragraphs 7-19 above, the Employers discriminated against Plaintiff based in part on his physical disability in violation of the FEHA through numerous illegal acts, including, but not limited to, refusing to provide him with any reasonable accommodations to allow him to return to work and failing to engage in the interactive process with him on at least 2 separate occasions.  The Employers were

COMPLAINT FOR DAMAGES

motivated by discriminatory animus as evidenced by their adverse actions taken against Plaintiff after his work restrictions were increased and while he was on his medical leave of absence.

28.   As a proximate result of the Employers' conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.   The amount of Plaintiff's damages will be ascertained at trial.

29.   The Employers' conduct, as described in paragraphs 7-19 above, was performed or ratified by managing agents, including, but not limited to, Larry, Rich, Sean, Janytra and Adrienne (collectively, the "Managing Agents").   The Managing Agents were each responsible for overseeing a substantial portion of the Employers' respective operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Employers' respective internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

30.   In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation at the workplace, especially when the Employers failed to provide Plaintiff with reasonable accommodations to allow him to return to work and failed to engage in a good faith interactive process with him.

31.   In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law.  By way of example, Global Capacity failed to accommodate Plaintiff or engage in a good faith interactive process with him which forced Plaintiff to take a medical leave of absence, and continue to remain on medical leave for months.  GTT thereafter retaliated against Plaintiff by,

COMPLAINT FOR DAMAGES

among other things, refusing to allow him to return to his former position with accommodations or any other position, and then by terminating his employment for failure to return from his medical leave. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

32.    In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents intended to cause emotional injury to Plaintiff. Specifically, GTT terminated his employment solely because he was unable to return to work from his medical by a specified date with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and his emotional wellbeing.

33.    The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing plaintiff in an action brought under its provisions. Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

34.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## VI.

## SECOND CAUSE OF ACTION

## (Failure to Prevent Discrimination in Violation of the FEHA)

## (On Behalf of Plaintiff Against All Defendants)

35.    Plaintiff realleges and incorporates by reference paragraphs 1-34, inclusive, of this Complaint as though fully set forth herein.

36.    California Government Code section 12940(k) makes it an unlawful employment practice for an employer to "fail to take all reasonable steps to prevent discrimination and harassment from occurring." The Employers violated this provision by failing to prevent discrimination and retaliation against Plaintiff, including those acts described in paragraphs 7-19 above.

COMPLAINT FOR DAMAGES

37.    As a result of the Employers' conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

38.    The Employers' conduct, as described in paragraphs 7-19 above, was performed or ratified by managing agents, including, but not limited to, Larry, Rich, Sean, Janytra and Adrienne (collectively, the "Managing Agents").  The Managing Agents were each responsible for overseeing a substantial portion of the Employers' respective operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Employers' respective internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

39.    In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation at the workplace, especially when the Employers failed to provide Plaintiff with reasonable accommodations to allow him to return to work and failed to engage in a good faith interactive process with him.

40.    In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law.  By way of example, Global Capacity failed to accommodate Plaintiff or engage in a good faith interactive process with him which forced Plaintiff to take a medical leave of absence, and remain on medical leave for months.  GTT thereafter retaliated against Plaintiff by, among other things, refusing to allow him to return to his former position with accommodations or any other position, and then by terminating his employment for failure to return from his medical leave.  The Managing Agents' conduct demonstrates a callous indifference for

COMPLAINT FOR DAMAGES

1    the law and Plaintiff's rights.

2    41.    In committing the foregoing acts as set forth in paragraphs 7-19 above, the

3    Managing Agents intended to cause emotional injury to Plaintiff.  Specifically, GTT

4    terminated his employment solely because he was unable to return to work from his

5    medical by a specified date with the intent to cause him severe emotional distress or at

6    least without regard for the consequences on Plaintiff's career, livelihood, and his

7    emotional wellbeing.

8    42.    The FEHA provides for an award of reasonable attorneys' fees and costs

9    incurred by a prevailing plaintiff in an action brought under its provisions.  Plaintiff has

10    employed and will continue to employ attorneys for the initiation and prosecution of this

11    action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.

12    Plaintiff is entitled to an award of attorneys' fees and costs.

13    43.    Plaintiff has been generally damaged in an amount within the jurisdictional

14    limits of this Court.

## VII.

## THIRD CAUSE OF ACTION

### (Failure to Accommodate in Violation of the FEHA)

### (On Behalf of Plaintiff Against All Defendants)

19    44.    Plaintiff realleges and incorporates by reference paragraphs 1-43, inclusive,

20    of this Complaint as though fully set forth herein.

21    45.    At times relevant to this lawsuit, Plaintiff was an employee of the

22    Employers with a physical disability protected under the FEHA.

23    46.    California Government Code section 12940(m) makes it unlawful "[f]or an

24    employer or other entity…to fail to make reasonable accommodation for the known

25    physical or mental disability of an applicant or employee."

26    47.    As more fully set forth above in paragraph 7-19 above, Plaintiff was

27    disabled while employed by the Employers.  Plaintiff's disabilities limited his ability to

28    perform major life activities, including, but not limited to, his ability to work.  The

COMPLAINT FOR DAMAGES

Employers knew and/or treated Plaintiff as if he had disabilities that limited his ability to perform major life activities as set forth in this Complaint.

48.     At the relevant times mentioned herein, Plaintiff was willing and able to perform the essential job duties of his position if certain reasonable accommodations had been made by the Employers.  At no time would the performance of the functions of the employment position, with a reasonable accommodation for Plaintiff's disability, have been a danger to Plaintiff's or any other person's health or safety, nor would it have created an undue hardship to the operation of the Employers' respective businesses.

49.     As set forth in paragraphs 7-19 above, Plaintiff sought reasonable accommodations, including, but not limited to, the use of a used rental car with more leg room for his knee, no driving of commercial vehicles and semi-sedentary light duty work only.  However, rather than accommodating him, the Employers failed to provide any of the work restrictions to him.

50.     As a proximate result of the Employers' conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

51.     The Employers' conduct, as described in paragraphs 7-19 above, was performed or ratified by managing agents, including, but not limited to, Larry, Rich, Sean, Janytra and Adrienne (collectively, the "Managing Agents").  The Managing Agents were each responsible for overseeing a substantial portion of the Employers' respective operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Employers' respective internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

- 13 -
COMPLAINT FOR DAMAGES

52.     In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation at the workplace, especially when the Employers failed to provide Plaintiff with reasonable accommodations to allow him to return to work and failed to engage in a good faith interactive process with him.

53.     In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law.  By way of example, Global Capacity failed to accommodate Plaintiff or engage in a good faith interactive process with him which forced Plaintiff to take a medical leave of absence, and remain on medical leave for months.  GTT thereafter retaliated against Plaintiff by, among other things, refusing to allow him to return to his former position with accommodations or any other position, and then by terminating his employment for failure to return from his medical leave.  The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

54.     In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents intended to cause emotional injury to Plaintiff.  Specifically, GTT terminated his employment solely because he was unable to return to work from his medical by a specified date with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and his emotional wellbeing.

55.     The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

56.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

COMPLAINT FOR DAMAGES

## IX.

## FOURTH CAUSE OF ACTION

### (Failure to Engage in Interactive Process in Violation of the FEHA)

### (On Behalf of Plaintiff Against All Defendants)

57.    Plaintiff realleges and incorporates by reference paragraphs 1-56, inclusive, of this Complaint as though fully set forth herein.

58.    California Government Code section 12940(n) makes it unlawful "[f]or an employer or other entity covered by this part to fail to engage in a timely, good faith interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

59.    California Government Code section 12926.1(e) states "The Legislature affirms the importance of the interactive practice between the applicant or employee and the employer in determining a reasonable accommodation, as the requirement has been articulated by the Equal Employment Opportunity Commission in its interpretive guidance of the Americans with Disabilities Act."

60.    As set forth in paragraphs 7-19 above, Plaintiff was disabled while employed by the Company.  Plaintiff's disability limited his ability to perform major life activities, including, but not limited to, his ability to work.  The Employers knew and/or treated Plaintiff as if he had disabilities that limited his ability to perform major life activities as set forth in this Complaint.

61.    As set forth in paragraphs 7-19 above, Plaintiff informed the Employers of his disabilities and requested accommodations including his doctor's directive that he return to work with modified work restrictions.  However, the Employers not only failed to work with Plaintiff to identify how the reasonable accommodations would be met, they failed to provide engage in an interactive process to discuss and determine alternative accommodations that could be provided, including, but not limited to, another position that allowed Plaintiff to return to work with his restrictions.

COMPLAINT FOR DAMAGES

62.     As a proximate result of the Employers' conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

63.     The Employers' conduct, as described in paragraphs 7-19 above, was performed or ratified by managing agents, including, but not limited to, Larry, Rich, Sean, Janytra and Adrienne (collectively, the "Managing Agents").  The Managing Agents were each responsible for overseeing a substantial portion of the Employers' respective operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Employers' respective internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

64.     In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation at the workplace, especially when the Employers failed to provide Plaintiff with reasonable accommodations to allow him to return to work and failed to engage in a good faith interactive process with him.

65.     In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law.  By way of example, Global Capacity failed to accommodate Plaintiff or engage in a good faith interactive process with him which forced Plaintiff to take a medical leave of absence, and remain on medical leave for months.  GTT thereafter retaliated against Plaintiff by, among other things, refusing to allow him to return to his former position with accommodations or any other position, and then by terminating his employment for failure to return from his medical leave.  The Managing Agents' conduct demonstrates a callous indifference for

COMPLAINT FOR DAMAGES

the law and Plaintiff's rights.

66.    In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents intended to cause emotional injury to Plaintiff. Specifically, GTT terminated his employment solely because he was unable to return to work from his medical by a specified date with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and his emotional wellbeing.

67.    The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing plaintiff in an action brought under its provisions. Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

68.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

**X.**

**FIFTH CAUSE OF ACTION**

**(Retaliation in Violation of the CFRA)**

**(On Behalf of Plaintiff Against All Defendants)**

69.    Plaintiff realleges and incorporates by reference paragraphs 1-68, inclusive, of this Complaint as though fully set forth herein.

70.    At all times herein mentioned, the FEHA, Government Code sections 12900-12996 were in full force and effect and were binding on the Company. This includes Government Code § 12945.2 *et seq*., commonly referred to as the CFRA. The CFRA requires that GTT refrain from discriminating or retaliating against any employee on the basis of that employee's need to take leave to tend to his own serious health condition, or for having taken such leave. *See* Govt. Code § 12945.2.

71.    At the relevant times mentioned herein, Plaintiff was employed by the Employers and suffered from a physical disability that limited his ability to perform

COMPLAINT FOR DAMAGES

major life activities, including, but not limited to, his ability to work.  The Employers were made aware of Plaintiff's disability because Plaintiff informed the Employers about the disability and his pending medical leave.

72.    As set forth in Paragraphs 7-19 above, Plaintiff exercised his right under the CFRA to take a medical leave of absence from work.  Plaintiff alleges that the Employers discriminated or retaliated against him for taking that CFRA leave by refusing to allow him to return to work in his former position as FST (or any other position within Global Capacity and/or GTT) with his modified work restrictions at any time during his medical leave of absence. Moreover, instead of accommodating him or engaging in an interactive process with him, GTT suddenly terminated his employment for failure to return to work by a specified date.  Accordingly, the Employers violated Government Code section 12945.2.

73.    As a result of the Employers' conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

74.    The Employers' conduct, as described in paragraphs 7-19 above, was performed or ratified by managing agents, including, but not limited to, Larry, Rich, Sean, Janytra and Adrienne (collectively, the "Managing Agents").  The Managing Agents were each responsible for overseeing a substantial portion of the Employers' respective operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Employers' respective internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

75.    In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful

COMPLAINT FOR DAMAGES

discrimination and retaliation at the workplace, especially when the Employers failed to provide Plaintiff with reasonable accommodations to allow him to return to work and failed to engage in a good faith interactive process with him.

76.     In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law.  By way of example, Global Capacity failed to accommodate Plaintiff or engage in a good faith interactive process with him which forced Plaintiff to take a medical leave of absence.  GTT thereafter retaliated against Plaintiff by, among other things, refusing to allow him to return to his former position with accommodations or any other position, and then by terminating his employment for failure to return from his medical leave, and remain on medical leave for months.  The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

77.     In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents intended to cause emotional injury to Plaintiff.  Specifically, GTT terminated his employment solely because he was unable to return to work from his medical by a specified date with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and his emotional wellbeing.

78.     The CFRA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

79.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

///

COMPLAINT FOR DAMAGES

# XI.

## SIXTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

### (On Behalf of Plaintiff Against GTT)

80.    Plaintiff realleges and incorporates by reference paragraphs 1-79, inclusive, of this Complaint as though fully set forth herein.

81.    GTT terminated Plaintiff's employment in violation of fundamental and well-established public policies, as set forth in various statutes, including, but not limited to, the FEHA and the CFRA.  Plaintiff alleges that his employment was terminated because of his disabilities and accommodation requests including his medical leave of absence which resulted in violation of the public policies set forth in the FEHA and the CFRA.

82.    As a proximate result of GTT's conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

83.    The Employers' conduct, as described in paragraphs 7-19 above, was performed or ratified by managing agents, including, but not limited to, Larry, Rich, Sean, Janytra and Adrienne (collectively, the "Managing Agents").  The Managing Agents were each responsible for overseeing a substantial portion of the Employers' respective operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the Employers' respective internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

84.    In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful

COMPLAINT FOR DAMAGES

discrimination and retaliation at the workplace, especially when the Employers failed to provide Plaintiff with reasonable accommodations to allow him to return to work and failed to engage in a good faith interactive process with him.

85.    In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law.  By way of example, Global Capacity failed to accommodate Plaintiff or engage in a good faith interactive process with him which forced Plaintiff to take a medical leave of absence.  GTT thereafter retaliated against Plaintiff by, among other things, refusing to allow him to return to his former position with accommodations or any other position, and then by terminating his employment for failure to return from his medical leave, and to remain on medical leave for months.  The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

86.    In committing the foregoing acts as set forth in paragraphs 7-19 above, the Managing Agents intended to cause emotional injury to Plaintiff.  Specifically, GTT terminated his employment solely because he was unable to return to work from his medical by a specified date with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and his emotional wellbeing.

87.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## XII.

## **PRAYER FOR RELIEF**

1.    For general damages, including emotional distress damages, according to proof on each cause of action for which such damages are available.

2.    For special damages, according to proof on each cause of action for which such damages are available.

3.    For compensatory damages, including emotional distress damages,

COMPLAINT FOR DAMAGES

according to proof on each cause of action for which such damages are available.

    4.    For punitive damages, according to proof on each cause of action for which such damages are available.

    5.    For declaratory and injunctive relief, as appropriate.

    6.    For prejudgment interest and post-judgment interest according to law.

    7.    For reasonable attorneys' fees incurred in this action pursuant to the FEHA, the CFRA and California Code of Civil Procedure section 1021.5.

    8.    For costs of suit incurred in this action.

    9.    For such other and further relief that the Court deems proper and just.

Dated:  July 24, 2018                    RISE LAW FIRM, PC

                                         By: _____
                                             LISA M. WATANABE-PEAGLER
                                             NEHEMIAH H. CHOI

                                         Attorneys for Plaintiff LESLIE WILLIAMS

## **DEMAND FOR JURY TRIAL**

Plaintiff Leslie Williams hereby demands a trial by jury on all causes of action alleged herein in the Complaint for Damages.

Dated:  July 24, 2018                      RISE LAW FIRM, PC

By: _____
LISA M. WATANABE-PEAGLER
NEHEMIAH H. CHOI

Attorneys for Plaintiff LESLIE WILLIAMS

COMPLAINT FOR DAMAGES

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GOVERNOR EDMUND G. BROWN JR.
                                                                                                                                              DIRECTOR KEVIN KISH
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 I TDD (800) 700-2320
http://www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

July 23, 2018

Nehemiah Choi
5900 Wilshire Blvd.
Los Angeles, California 90036
Lisa Watanabe-Peagler
5900 Wilshire Blvd. Suite 2600
Los Angeles, California 90036

RE:    **Notice to Complainant's Attorney**
         DFEH Matter Number: 201807-02996723
         Right to Sue: Williams / GTT Americas, LLC et al.

Dear Nehemiah ChoiLisa Watanabe-Peagler:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GOVERNOR EDMUND G. BROWN JR.
                                                                                                                      DIRECTOR KEVIN KISH

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 I TDD (800) 700-2320
http://www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

July 23, 2018

RE:    **Notice of Filing of Discrimination Complaint**
        DFEH Matter Number: 201807-02996723
        Right to Sue: Williams / GTT Americas, LLC et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency          GOVERNOR EDMUND G. BROWN JR.
                                                                             DIRECTOR KEVIN KISH

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 I TDD (800) 700-2320
http://www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

July 23, 2018

Leslie Williams
5900 Wilshire Blvd. Suite 2600
Los Angeles, California 90036

RE:   **Notice of Case Closure and Right to Sue**
      DFEH Matter Number: 201807-02996723
      Right to Sue: Williams / GTT Americas, LLC et al.

Dear Leslie Williams,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective July 23, 2018 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Leslie Williams                                      DFEH No. 201807-02996723

                            Complainant,

vs.

GTT Americas, LLC
7900 Tysons One Place Suite 1450
McLean, Virginia 22102

GC Pivotal, LLC
7900 One Tysons Place Suite 1450
McLean, Virginia 22102

                      Respondents

---

1. Respondent **GTT Americas, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Leslie Williams**, resides in the City of **Los Angeles** State of **California.**

3. Complainant alleges that on or about **April 16, 2018**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's disability (physical or mental) and as a result of the discrimination was terminated, denied or forced transfer, denied a work environment free of discrimination and/or retaliation, denied any employment benefit or privilege, denied reasonable accommodation for a disability.

**Complainant experienced retaliation** because complainant requested or used a disability-related accommodation and as a result was terminated, denied or forced transfer, denied a work environment free of discrimination and/or retaliation, denied any employment benefit or privilege, failed to give equal considerations in making employment decisions, denied reasonable accommodation for a disability.

-1-

Date Filed: July 23, 2018

**Additional Complaint Details:** GC Pivotal LLC dba Global Capacity ("Global Capacity") is a telecommunications and internet provider company that was acquired by GTT Americas LLC ("GTT") in approximately September 2017.  Plaintiff was employed by Global Capacity and/or GTT for close to 18 years from October 16, 2000 until his termination on April 16, 2018 as a Field Service Technician.  As a Field Service Technician ("FST"), Plaintiff was responsible for, inter alia, servicing customers with their computer systems including servers, network infrastructure equipment and internet access or other equipment in the field as well as maintaining and servicing these computer systems at approximately 45 client locations in the Inland Empire region.  Throughout his employment, Plaintiff reported directly to Rich Szamlewski ("Rich"), the Senior Supervisor of Field Operations, and Sean Kavanagh ("Sean"), the Director of West Coast Field Services/Vendor Management.

Plaintiff's work performance as a FST was exemplary over the years.  However, in March 2017, Plaintiff suffered a torn meniscus in his right knee that was caused by repetitive movements at work.  As a result of his injury, he visited a doctor at Kaiser Permanente ("Kaiser") on or about March 29, 2017.  At that visit, the doctor instructed him to modify his work duties from March 29 to April 29 as follows: occasionally sit up to 25% of the shift and to occasionally drive up to 25% of the shift.  Plaintiff notified Global Capacity about these restrictions.

Global Capacity therefore agreed to permit Plaintiff to work from home in a different position to accommodate his restrictions starting in April 2017.  Specifically, Plaintiff performed job duties similar to a Tier 1 technical support representative at home – he offered technical support services in an online chat line room for 8 hours a day, 5 days a week to technicians across the county.  At home, Plaintiff was able to use a sit/stand desk and an ergonomic chair.

On April 26, one of Plaintiff's doctors at Kaiser slightly modified his restrictions from April 28 to June 21 to include occasionally sitting up to 25% of shift and no more than 2 to 3 hours of driving per day until his knee issue was resolved.  Plaintiff nevertheless continued to work in his technical support position.

On June 30, Plaintiff's job duties were modified again for June 30 to July 30 to include driving intermittently up to 50% of shift; frequently bending at waist up or torso/spine twisting up to 75% of shift; no climbing stairs or ladders; no use of scaffolds or working at heights and lifting/carrying/pushing/pulling no more than 50 pounds. Shortly thereafter, Global Capacity considered whether it was possible to move the car seat back so that Plaintiff could comfortably drive his work vehicle. However, it was determined that this was not possible due to liability concerns, so Plaintiff suggested that Global Capacity purchase a used rental car with the

Date Filed: July 23, 2018

necessary leg space so that he could drive with his knee.  After having to follow up with Global Capacity on his request, Plaintiff was eventually informed about the company's refusal to provide this accommodation because it was not in the company's budget to purchase a used rental car.  Plaintiff therefore continued to work in the technical support position.

On July 19, Plaintiff filed a workers' compensation claim for his injury.

On August 7, Plaintiff visited a doctor at Kaiser and his restrictions were increased from August 8 to 18 since his injury had not improved.  Specifically, Plaintiff was instructed to drive intermittently up to 50% of shift; frequently bend at waist up or torso/spine twist up to 75% of shift; climb ladders occasionally up to 25% of shift; squat, kneel or bend occasionally up to 25% of shift and lift/carry/push/pull no more than 20 pounds.  The following day, Plaintiff texted a picture of his doctor's note to Rich and Sean.  That same day, Sean responded in a text message the following: "Got it. Rich can you block Les off indefinitely?"  Rich responded on August 9 that the "[j]obs have been moved and [Plaintiff's] profile is unavailable for work."  During this time, neither Rich nor Sean had any discussions with Plaintiff about his updated restrictions, whether there were any accommodations the company could provide to allow him to resume his position as a FST, or whether there was another position available (e.g., a position in tech support similar to what he had been doing up until that point) that would allow him to continue working with his restrictions.

Plaintiff was therefore forced to go on a medical leave of absence on or about August 20.  Notably, shortly after he went on leave, Plaintiff received an email from Janytra Brooks ("Janytra"), the Human Resources Manager, acknowledging that his doctor's note said he could return to full capacity on August 19 and asking whether he had any additional doctor's notes since then.  Plaintiff responded "no" and then told Janytra that Sean was the one who said to block him off of work indefinitely.  Shortly thereafter, Plaintiff had a telephone conversation with Janytra and Sean.  In this call, Plaintiff told them that he had not visited the doctor since his last visit on August 7.  However, Plaintiff did confirm that he was able to return to work on August 19 per his doctor's note.  Janytra and Sean noticed that Plaintiff's workers' compensation claim was being reviewed and a determination would be made in October, so they decided to wait to do anything until then.  Plaintiff therefore continued to remain on medical leave.

In or around September 2017, GTT acquired Global Capacity and all of Global Capacity's employees were transitioned to become GTT employees effective January 1, 2018.  Starting on or about September 26, Plaintiff started receiving treatment from Behnam Sam Tabibian, M.D., QME at the Physical Medicine Institute in Sherman Oaks, California through his workers' compensation case.  Dr. Tabibian

*Complaint – DFEH No. 201807-02996723*

Date Filed: July 23, 2018

instructed Plaintiff to perform modified work with the following restrictions: no driving of commercial vehicles and semi-sedentary light duty work only.

From September 26 to March 15, 2018, Plaintiff continued to see Dr. Tabibian each month and his work restrictions remained the same after each visit.  Plaintiff spoke with Sean and was told that if a job became available that he could have the job.  However, Plaintiff never heard from his manager, Human Resources or anyone else about any such job vacancies.  In mid-March, Adrienne Littlepage-Cormier ("Adrienne"), GTT's Human Resources Business Partner, mentioned to Plaintiff that she aware of Global Capacity's prior decision that it was no longer in its budget to purchase a rental car for Plaintiff as an accommodation.  However, Adrienne said that may be an option with GTT as long as the company knew when he was going to return to work.

On April 4, Plaintiff received an email with an attached letter from Adrienne. In this letter, Adrienne initially summarized Plaintiff's leave history – i.e., that he had been on leave since July 19, 2017 as of January 1, 2018 and then put on FMLA leave by GTT as of January 15, 2018.  Adrienne further stated that Plaintiff's FMLA leave was set to expire on April 8 and that if he was unable to return to work on or before April 16, then his employment would end.  In the letter, Adrienne also falsely stated that GTT had offered Plaintiff a larger service vehicle, which he declined. Moreover, Adrienne requested that Plaintiff provide any alternative accommodations to them by April 11.

On April 13, Plaintiff emailed Adrienne to inform her that his injury had not improved and his restrictions remained the same.  Shortly thereafter, on April 16, Plaintiff received an email from Adrienne notifying him of the decision to terminate his employment.  At that time, there had been no discussions with Plaintiff about alternative accommodations to allow him to resume in his position as a FST or other available positions in GTT and/or Global Capacity that Plaintiff could have performed with his restrictions.

Plaintiff alleges that his physical disability and accommodation requests were substantial motivating reasons for GTT's sudden and abrupt decision to terminate his employment.  In addition to this unlawful termination, Plaintiff alleges that GTT further violated his rights by failing to engage in the interactive process and failing to provide him with reasonable accommodations prior to making the decision to terminate her employment.  Finally, Plaintiff further alleges that Global Capacity failed to reasonably accommodate him and engage in the interactive process that ultimately forced him to go on leave on or about August 20.

*Complaint – DFEH No. 201807-02996723*

Date Filed: July 23, 2018

VERIFICATION

I, **Lisa M. Watanabe-Peagler**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On July 23, 2018, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, CA**

*Complaint – DFEH No. 201807-02996723*

Date Filed: July 23, 2018